IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT GILBERT, #B-35431, </br></br>  Plaintiff, </br></br> vs. </br></br> JAMES BERRY, OFFICER NEUMILLER, ELDRON COOPER, C/O MOLENHOUR, LIEUTENANT DALLAS, JOSHA SIMMS, LIEUTENANT WHEELER, NATHAN BOYER, SHAWN OCHS, JAMES HANSON, CHAD RAY, LIEUTENANT BAYLOR, KEVIN JOHNSON, C/O RUSH, and LIEUTENANT FREEMAN, </br></br> Defendants. | Case No. 16-cv-00556-MJR |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Robert Gilbert, a prisoner who is currently incarcerated at Stateville Correctional Center ("Stateville"), brings this civil rights action pursuant to 42 U.S.C. § 1983 against fifteen officials at Lawrence Correctional Center ("Lawrence") (Doc. 1, pp. 6-18).  In the complaint, Plaintiff claims that he was subjected to the unlawful use of excessive force, denial of medical care, and false disciplinary charges at Lawrence, all in retaliation for filing a lawsuit against one of the prison's nurses.  Plaintiff now sues fifteen prison officials for violating his rights under the First, Sixth, and Eighth Amendments (*id*. at 15-18).  He seeks monetary damages and injunctive relief (*id*. at 19).

This is not the first time that Plaintiff has brought these claims in a § 1983 action in this District. He filed a similar action against the defendants[1] in 2015. *See Gilbert v. AFSCME Counsel 31*, No. 15-cv-00288-MJR-SCW (S.D. Ill. filed Mar. 13, 2015) ("related action"). The Court dismissed several of Plaintiff's claims without prejudice at screening on April 9, 2015 (Doc. 11, related action). All other claims were dismissed without prejudice on exhaustion grounds on April 25, 2016 (Doc. 128, related action). Judgment was entered in the related action on April 26, 2016 (Doc. 129, related action).

Plaintiff filed this action the following month. In his complaint, Plaintiff indicates that he has now fully exhausted all available administrative remedies with respect to his claims (Doc. 1, p. 5). Plaintiff's complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A(a). Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. The complaint survives preliminary review under this standard.

## The Complaint

In the complaint, Plaintiff describes himself as a litigious inmate (Doc. 1, pp. 6-16). According to the allegations, he once sued Mary Loftin, a nurse at Lawrence who was both well-known and liked by prison staff (*id*. at 6). In fear of retaliation, Plaintiff asked that he never be transferred to Lawrence. His request was denied.

---

[1] The instant complaint names several defendants who were not named in the related action. Most of these defendants replace the unknown parties, referred to as "Doe" defendants, in the related action.

Plaintiff was transferred to Lawrence in 2013. He immediately told Warden Marc Hodge[2] and Internal Affairs Officer Molenhour that he feared for his safety. He knew of an officer named James Berry, who had a reputation for harassing litigious inmates. Plaintiff asked Warden Hodge and Officer Molenhour to investigate Officer Berry. This request was denied, as was Plaintiff's related emergency grievance (*id*. at 6-7).

When news of Plaintiff's lawsuit against Nurse Loftin spread, Plaintiff was targeted for harassment by prison officials. Lieutenant Dallas told Plaintiff that he remembered seeing "their friend" Mary Loftin with Plaintiff, and he knew about the lawsuit that Plaintiff filed against her. The lieutenant warned Plaintiff that the officers "don't tolerate that here" (*id*. at 7). The lieutenant then found a "special place" for Plaintiff to stay (*id*.). For a month, he was housed in an isolated cell located in the prison's health care unit, where temperatures remained below zero degrees the entire time. After his transfer from the cell, Plaintiff was warned that things would get worse if "that didn't teach [him]" (*id*.).

According to Plaintiff, things got worse. When he tried to enroll in school, Officer Molenhour "conspired" to prevent him from doing so (*id*.).

Lieutenant Dallas, Officer Molenhour, Counselor Stevenson, and Warden Hodge then decided to place Plaintiff in a cell near Officer Berry. On January 12, 2015, Plaintiff was informed of his impending move (*id*. at 8). He was instructed to wait in the day room while his new cell was prepared. While waiting, Plaintiff asked an officer in the housing operations pod to make sure that he would not be transferred to a cell near Officer Berry.

---

[2] Neither Warden Marc Hodge nor Counselor Stevenson is named as a defendant in this action. When parties are not listed in the case caption, this Court will not treat them as defendants, and any claims against them are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

In the midst of this conversation, Officer Berry approached Plaintiff and said that he knew about the lawsuits Plaintiff filed. Officer Berry ordered Plaintiff to "lock up" in a shower. As he said this, the officer grabbed Plaintiff by the right wrist. Afraid, Plaintiff "jerked away from Berry" (*id.*). Officer Berry called for backup and cuffed Plaintiff behind his back. He squeezed the cuffs so tightly that Plaintiff sustained permanent nerve damage in his wrists and arms (*id.* at 9).

Several officers arrived in response to the "Code 1." (*id.*). Lieutenant Baylor handed Plaintiff over to five officers, including Kevin Johnson, Shawn Ochs, Josha Simms, Nathan Boyer, James Hanson, Chad Ray, and Officer Rush. The officers grabbed Plaintiff's cuffed wrists and hyperextended his arms behind his back. This action caused Plaintiff's "tindens (sic) to rip slightly," resulting in significant pain (*id.* at 10).

The officers then grabbed Plaintiff by his arms and legs and dragged him to segregation. On the way, one officer used his knee to hit Plaintiff in the face approximately eight times, resulting in numbness and swelling (*id.*). Plaintiff thought he lost a tooth and told the officers this (*id.* at 11). The officers ignored him and instead pushed Plaintiff's head and neck downward, which caused him to stop breathing (*id.* at 9). When they arrived in segregation, the officers threw Plaintiff "five feet in the air" and into the shower, where they left him in tight handcuffs for forty minutes (*id.* at 11). Lieutenants Dallas, Wheeler, Freeman, and Baylor were present during the entire incident, but took no action to intervene and stop the officers from injuring Plaintiff, despite his complaints of numbness and pain in his hands, arms, and legs.

Lieutenant Wheeler and Officer Mohlenhour then interviewed Plaintiff (*id.*). At the time, he was suffering from numbness in his hands and legs, blurred vision, a bloody nose, a swollen and bloody mouth, and a swollen face. He told both prison officials that he was dizzy and felt

like fainting.  Lieutenant Wheeler and Officer Mohlenhour denied his requests for medical care.  They took his statement and returned him to his cell.

Plaintiff was eventually taken to the prison's healthcare unit for medical care, after another officer noticed his injuries.  He received head and chest x-rays, pain medications, and ice (*id*. at 12).  Plaintiff's request for an MRI and/or CT scan was denied.

Plaintiff was then issued a disciplinary ticket for assaulting a staff member, insolence, and disobeying a direct order (*id*. at 28-29).  In a disciplinary report prepared by Officer Berry, Plaintiff was accused of hitting Officer Berry.  In a second report prepared by Officer Neumiller, there was no mention of an assault on Officer Berry (*id*. at 12).  Plaintiff claims that he was found guilty of all three rule violations, only after Officer Cooper and Wheeler violated his right to due process of law by denying his request to call witnesses and prepare for the disciplinary hearing (*id*. at 14, 17).  Plaintiff was punished with one year of segregation, one year of C-grade, and a disciplinary transfer (*id*. at 28-29).

Although prison policy generally calls for an immediate prison transfer of any inmate who assaults a staff member, the defendants did not follow this policy in Plaintiff's case.  He was instead placed in a cell for inmates on suicide watch because of an unrelated ticket issued by Officer Cooper.  While in this cell, Officer Cooper threatened to hang Plaintiff for assaulting Officer Berry.  Counselor Ray heard Officer Cooper's threat and took no action.[3]

Plaintiff was ultimately held in this cell for two months, until his two black eyes and swollen face healed.  The lights remained on at all times, causing Plaintiff to suffer from migraines (*id*. at 14).  The defendants refused to replace the urine-, blood-, and feces-stained mattress.  Plaintiff's requests for treatment at an outside facility were also denied.

---

[3] This lawsuit does not encompass any claims arising from Officer Cooper's issuance of an unrelated disciplinary ticket.  Plaintiff offers no details regarding this ticket and asserts no claim based on it.  These claims are considered dismissed without prejudice.

Plaintiff claims that this decision to hold him at Lawrence was nothing more than a thinly-veiled attempt to cover up the unlawful conduct of prison officials on January 12, 2015.

### Merits Review Pursuant to 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to reorganize the claims in Plaintiff's *pro se* complaint into the following enumerated counts, which are generally consistent with Plaintiff's designation of these claims in the complaint. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merit.

**COUNT 1:** Defendant Molenhour retaliated against Plaintiff by conspiring to deny his request to attend school, in violation of the First Amendment (**Count 3**, related action; Doc. 1, p. 15).

**COUNT 2:** Defendant Dallas retaliated against Plaintiff for filing lawsuits by placing him in a cold cell for a month, in violation of the First and Eighth Amendments (**Count 4**, related action; Doc. 1, p. 15).

**COUNT 3:** Defendants Mohlenhour and Dallas retaliated against Plaintiff for filing lawsuits by moving him to a cell near Defendant Berry, in violation of the First Amendment (**Count 5**, related action; Doc. 1, p. 15).

**COUNT 4:** Defendant Berry retaliated against Plaintiff for being litigious by handcuffing him too tightly, grabbing him, calling a false "Code 1," and preparing a false incident report in support of a disciplinary ticket for staff assault, in violation of the First and Eighth Amendments (**Count 6**, related action; Doc. 1, p. 16).

**COUNT 5:** Defendants Baylor, Dallas, Wheeler, and Freeman retaliated against Plaintiff and failed to protect him when they responded to the "Code 1" by handing him over to prison officials who assaulted Plaintiff, in violation of the First and Eighth Amendments (**Count 7**, related action; Doc. 1, p. 16).

**COUNT 6:** Defendants Johnson, Ochs, Simms, Boyer, Hanson, Ray, and Rush

      used excessive force against Plaintiff or failed to protect him, by kneeing him in the face eight times, holding his head down in a manner that caused fainting, dragging him, throwing him into the shower, and failing to remove his handcuffs in the process of transporting him to segregation, in violation of the Eighth Amendment (**Count 8**, related action; Doc. 1, p. 16).

**COUNT 7:** Defendants Molenhour, Wheeler, Baylor, Dallas, Freeman, Johnson, Ochs, Simms, Boyer, Hanson, Ray, and Rush exhibited deliberate indifference to Plaintiff's medical needs by denying him medical care for the injuries that he sustained during the "Code 1" (**Count 10**, related action; Doc. 1, p. 16).

**COUNT 8:** Defendants Cooper, Wheeler, Mohlenhour and Freeman retaliated against Plaintiff under the First Amendment and deprived him of a protected liberty interest without due process of law under the Fourteenth Amendment by punishing him with a year in segregation following an unfair disciplinary hearing on false disciplinary charges (**Count 11**, related action; Doc. 1, pp. 15, 17).

**COUNT 9:** Defendants Molenhour, Freeman, Cooper, and Wheeler's actions resulted in the intentional infliction of emotional distress on Plaintiff in violation of Illinois law (Doc. 1, p. 17).

## Discussion

After carefully considering the allegations, the Court finds that the complaint states the following colorable claims: **Counts 2, 3, 4, 5, 6, 7, 8**[4] and **9** against those defendants who are identified above in connection with each claim.

The only claim that is subject to dismissal at this early stage is the retaliation claim (**Count 1**) against Defendant Molenhour, based on his denial of Plaintiff's access to educational programs at Lawrence. The complaint makes only passing reference to this claim when listing

---

[4] No claim arises under the Sixth Amendment because a prison disciplinary hearing is not a criminal trial. "Prisoners in this context do not possess Sixth Amendment rights to confront and cross-examine witnesses." *See Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir. 1994). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). This means that they may deny a prisoner's request to call certain witnesses or to introduce certain evidence. Although Plaintiff cannot proceed with a Sixth Amendment claim for the denial of his right to confront witnesses at his disciplinary hearing, he is not precluded from proceeding with a claim under the Fourteenth Amendment Due Process Clause.

the retaliatory acts that were directed toward Plaintiff at Lawrence. Plaintiff draws no connection between constitutionally protected activity and this allegedly retaliatory conduct. He also does not set forth a chronology of events suggesting that Defendant Molenhour may have retaliated against him by denying him access to educational courses.

Although allegations in a *pro se* complaint are to be liberally construed, courts cannot "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Bald assertions and unsupported allegations are not enough to support a claim, even at this stage. Because the complaint offers nothing more than bald assertions in support of this claim, **Count 1** shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Request for Medical Testing

In his request for relief, Plaintiff seeks additional diagnostic testing, including a bone scan, MRI, and/or CT scan (Doc. 1, p. 19). The Court construes this as a request for injunctive relief, which is hereby **DENIED** without prejudice.

Plaintiff is no longer housed at Lawrence, where the events giving rise to this action occurred. Unless he anticipates transferring back to this facility, his request for injunctive relief *in this action* is considered moot. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Lawrence under

the conditions described in the complaint would it be proper for the Court to consider injunctive relief.  *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).  If Plaintiff is now being denied medical treatment for a serious medical need at a different institution, he may file a separate lawsuit to address that Eighth Amendment claim and request injunctive relief in that action.

### Pending Motion

Plaintiff filed a Motion to Supplement Pages to 1983 Suit (Doc. 6), which is hereby **DENIED**.  The Court does not permit piecemeal amendments to the original complaint.  Plaintiff's proposed supplement consists of only three pages, two of which are the same (*i.e.*, page 9 of 5), one of which was already legible in the original complaint (*i.e.*, 8 of 5), and none of which add any material allegations to the original complaint.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** with prejudice against Defendant **MOLENHOUR** for failure to state a claim upon which relief may be granted.  All other claims are subject to further review.

**IT IS FURTHER ORDERED** that with regard to **COUNTS 2, 3, 4, 5, 6, 7, 8,** and **9**, the Clerk of Court shall prepare for Defendants **BERRY, NEUMILLER, COOPER, DALLAS, MOLENHOUR, WHEELER, BOYER, OCHS, SIMMS, HANSON, RAY, BAYLOR, JOHNSON, RUSH,** and **FREEMAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the

date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ALSO ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 11, 2016**

                                                                         **s/ MICHAEL J. REAGAN**
                                                                         **Chief Judge**
                                                                         **United States District Court**